UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHY NORTON, on behalf of herself
and all others similarly situated,

                          Plaintiff,

   -against-                                            09-CV-587

CORRECTIONAL MEDICAL CARE, INC.,
and MICHELLE PARSONS,

                          Defendants.
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

**I.**    **INTRODUCTION**

      Plaintiff commenced this action alleging a collective action claim under the Fair Labor Standards Act for unpaid overtime on behalf of herself and all others similarly situated; individual claims of discrimination under the federal and New York state anti-discrimination laws; and a claimed violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). See Am. Compl. [dkt. # 15]. Plaintiff now moves for an order enforcing the terms of a settlement agreement circulated between counsel. See Mot. [dkt. # 24]. Defendants have opposed the motion. See Opp. to Mot. [dkt. # 26]. For the reasons that follow, the motion is denied.

1

**II.     BACKGROUND**

There is little dispute regarding the material facts surrounding the purported settlement of this action. See Joseph Aff., Ex. A (Agreed Statement of Facts).  On May 28, 2010, "the parties reached a settlement in principle of [the] monetary component to be paid to plaintiff by defendant." Id. ¶ 1.  It was agreed by the attorneys that defense counsel would draft the settlement agreement.  Id. ¶ 2.  On June 3, defense counsel sent an e-mail to plaintiff's counsel stating: "I am finalizing the agreement and my client needs to look at [it]. I am aiming for early next week." Id. ¶ 3.  On June 7, defense counsel sent another e-mail indicating that she was working on getting the draft agreement to plaintiff's counsel as soon as she could. Id. ¶ 4.

On June 9, plaintiff's counsel sent an e-mail stating: "I didn't want to pressure you without need.  But things have changed a little and I need that agreement as soon as possible.  Can you get it to me today?" Id. ¶ 5.  Defense counsel responded: "I have not gotten all the comments back from my client, I do not anticipate major changes, but I can send you what I have with the caveat that there may be a few changes. OK?" Id. ¶ 6.  Plaintiff responded back: "OK, good idea." Id. ¶ 7.  Defense counsel then sent plaintiff's counsel a Release and Settlement Agreement stamped with the word: "DRAFT." Id. ¶ 8.

After reviewing the draft settlement agreement, plaintiff's counsel sent defense counsel e-mails on June 9 indicating that he wanted included in the agreement mutual non-disparagement, mutual remedy for breach, and mutual confidentiality clauses.  Id. ¶¶ 9-10.  Plaintiff's counsel also asked whether it was necessary for Defendant to issue Plaintiff a tax form 1099 for attorney's fees to be paid under the settlement. Id. ¶ 9.  On June 10, defense counsel wrote to the Court indicating that the parties had "an agreement

2

in principle to resolve [the] matter" and that it would take "approximately four (4) weeks to finalize [the] settlement agreement." Id. ¶ 11.

Between June 14 and June 23, plaintiff's counsel e-mailed defense counsel several times inquiring about the status of the agreement and Plaintiff's proposals for additions to the agreement. Id. ¶ 13. Defense counsel responded to the e-mails indicating, in substance, that she was still attempting to speak with her client regarding the terms of the agreement but had not been able to do so. Id. ¶ 14. On June 23, plaintiff's counsel had his client sign the draft agreement that was sent on June 9, and then sent the agreement to defense counsel with the following text:

> In an abundance of caution I am sending you [the] agreement signed by my client. We therefore have agreed to all terms. As she has seven days to revoke, I believe we have time and reason to further discuss the changes asked for. I am sure you understand.

Id. ¶ 15.

Defense counsel immediately responded:

> Why [*sic*] I do understand your client's concerns, we have not agreed on all terms stated in your email below. I specifically stated to you, and wrote in my email of June 9, 2010, that there may be changes from my client, this is why I specifically wrote DRAFT on the agreement. Moreover, it is not signed by my client.
>
> I told you earlier today that I will be speaking with my client tomorrow (we were supposed to speak today and he had family issues to attend to). I also told you that I will be in touch with you tomorrow, and I will.

Id. ¶ 16.  Plaintiff responded: "Thanks. We[,] I believe[,] are all working towards the same goal and will get there." Id. ¶ 17.

On June 25, defense counsel sent plaintiff's counsel an e-mail indicating that she told her client that "he needs to get any issues he has with the [agreement] to me by end

3

of business Mon." Id. ¶ 18.  The e-mail also indicated that defense counsel was working with "those that I need to to ensure that the payments are also being taken care of in a timely fashion," and concluded by saying:  "Yes, we are working towards the same goal." Id.  On June 28, defense counsel sent an e-mail asking for a W-9 form "for payment." Id. ¶ 19.

However, on July 1, defense counsel unsuccessfully attempted to contact plaintiff's counsel, leaving a phone message and sending an e-mail indicating that they needed to speak concerning the case. Id. ¶ 20.  On July 2, defense counsel sent plaintiff's counsel an e-mail indicating: "My client no longer wishes to settle.  Please contact me at your earliest convenience to discuss next steps as we must contact the Court." Id. ¶ 21.  The instant motion followed.

### III.   DISCUSSION

A settlement agreement reached between parties to a lawsuit is a contract which may be enforced in accordance with common law contract principles. Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007); see also Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 322 (2d Cir.1997)(there is no material difference between the applicable New York or federal common law standard); Monaghan v. SZS 33 Assocs., 73 F.3d 1276, 1283 n. 3 (2d Cir.1996) ( "[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule.").

> Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation. Consequently, a voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed. The settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are

reduced to writing.

Powell, 497 F.3d at 129 (internal quotation marks and citations omitted); see also Ciaramella, 131 F.3d at 326 ( "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court.").

Here, there was not a voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record.  The only discernable indication to the Court that a settlement had been reached was defense counsel's June 10, 2010 letter indicating that "the parties have come to an agreement in principle to resolve this matter."  Dkt. # 21 (emphasis added).  The letter also indicated, however, that "[t]he parties anticipate that it will take approximately four (4) weeks to finalize our settlement agreement and file a Stipulation of Dismissal with the Court."  Id.  This clearly indicated that the parties had not come to an agreement on all terms of the settlement.

The undisputed facts also indicate that the draft agreement sent to plaintiff's counsel on June 9, and which was signed by Plaintiff and which is now sought to be enforced, did not represent a meeting of the minds of the parties on all terms of the settlement.   On June 9 (the day before the letter was sent to the Court), at plaintiff's counsel's request, defense counsel sent a draft of the settlement agreement with the admonition: "I have not gotten all the comments back from my client, I do not anticipate major changes, but I can send you what I have with the caveat that there may be a few changes. OK?"  Plaintiff's counsel responded back acknowledging that the document was a draft and, thereafter, proposing changes to the draft agreement. This hardly indicates that there was a meeting of the minds on the terms of the settlement agreement. See Quik Park Felise LLC v. 310 West 38th LLC, 13 Misc.3d 1228(A), 831 N.Y.S.2d 349

5

(Table), 2006 WL 3025672, at * 2 (N.Y. Sup., Sept. 11, 2006)("[D]efendants cite well established case law that the acceptance of an offer conditioned on the offeror's assent to additional or different terms is a counter-offer which constitutes a rejection of the offer, thus terminating the offer.")(citing Homayouni v. Banque Paribas, 241 A.D. 2d 375, 376, 660 N.Y.S. 2d 413 (1st Dept 1997), Keryakos Textiles, Inc. v. CRA Development, Inc., 167 A.D. 2d 738, 739, 563 N.Y.S. 2d 308 (3rd Dept 1990), and Restatement (Second) of Contracts, § 59); see also  22 N.Y. Jur. 2d Contracts § 41.[1]

Even after plaintiff's counsel had his client sign the draft agreement, he indicated that his client was still requesting changes before the agreement was finalized  ("As she has seven days to revoke, I believe we have time and reason to further discuss the changes asked for.").  In response to receiving the signed draft agreement, defense counsel immediately wrote back: "Why [sic] I do understand your client's concerns, we have not agreed on all terms stated in your e-mail below."  Defense counsel also reminded plaintiff's counsel that she had written in her June 9 e-mail accompanying the draft agreement that "there may be changes from my client, this is why I specifically wrote DRAFT on the agreement.  Moreover, it is not signed by my client."  Plaintiff's counsel seemingly acknowledged that the draft agreement was not a final representation of a complete agreement and that terms of the settlement were still to be finalized ("Thanks.

---

[1] 22 N.Y. Jur. 2d Contracts § 41 provides:

An offer is terminated by rejection and cannot thereafter be accepted so as to create a contract. Any words or acts of the offeree indicating that he or she declines the offer, or which justify the offeror in inferring that the offeree intends not to accept the offer or give it further consideration, amounts to a rejection. A request for a change or modification of a proposed contract, made before an acceptance thereof, amounts to a rejection of it. A counteroffer constitutes a rejection of an offer; rejection by counteroffer extinguishes the offer and renders any subsequent acceptance thereof inoperative.

We[,] I believe[,] are all working towards the same goal and will get there.").

All of these facts indicate that an agreement on all terms of a settlement had not been reached and that it was the intention of both parties to continue to negotiate concerning these terms.  While the facts indicate that the monetary component of the settlement had been agreed to, the facts also indicate that the other terms of the settlement had not been agreed to by the parties.   As counsel for both parties acknowledged on June 23 and 25, they were both "working for the same goal" – a complete agreement on all terms  - but they had not yet gotten there.  Although defense counsel apparently acted with professional courtesy in an attempt to speed the resolution process along by forwarding a draft of the settlement agreement that she was working on, she clearly indicated that her client had not agreed to the terms contained in the draft agreement.  It is unclear which terms her client did not agree to and, on this record, it can only be assumed that the "monetary component" was the only issue upon which agreement had been reached.

> [B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained. Otherwise, a court, in intervening, would be imposing its own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which they have mutually committed themselves. Thus, definiteness as to material matters is of the very essence in contract law. Impenetrable vagueness and uncertainty will not do (1 Corbin, Contracts, § 95, p 394; 6 Encyclopedia of New York Law, Contracts, § 301; Restatement, Contracts 2d, § 32, Comment a).

Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981).

The draft agreement sent to plaintiff's counsel on June 9 represented, at most, an agreement to agree.  As such, it is unenforceable.  Id. ("[I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material

7

term is left for future negotiations, is unenforceable."); see also Computer Associates Intern., Inc. v. U.S. Balloon Mfg. Co., Inc., 10 A.D. 3d 699, 700  (2d Dept. 2004)("A contract is unenforceable where there is no meeting of the minds between the parties with regard to a material element thereof.").

### IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion to enforce a settlement agreement in this matter  [dkt. # 24] is **DENIED**.

**IT IS SO ORDERED**

DATED:October 18, 2010

_____
Thomas J. McAvoy
Senior, U.S. District Judge